(No. 31831.—

W. R. Schussler *et al.*, Appellants, *vs.* Illinois Commerce Commission *et al.*—(Wabash Railroad Company, Appellee.)

*Opinion filed November 27, 1951.*

DITCHBURNE & BOHLING, of Chicago, (HARRY S. DITCHBURNE, of counsel,) for appellants.

ELMER W. FREYTAG, of Chicago, for appellee; IVAN A. ELLIOTT, Attorney General, of Springfield, (MILTON MALLIN, and WILLIAM R. MING, JR., of counsel,) for the Illinois Commerce Commission.

Mr. JUSTICE CRAMPTON delivered the opinion of the court:

On August 14, 1947, a group of persons acting as individuals and as representatives of various municipalities and civic organizations filed a petition with the Illinois Commerce Commission, praying that the Wabash Railroad Company be ordered to install additional suburban trains between Orland Park and Chicago, and to furnish new and improved equipment. After extensive hearings, the commission entered an order on August 18, 1949, denying the prayer for additional trains but directing the railroad to provide an adequate number of clean, well-ventilated coaches as replacements for the old equipment of existing trains, and to make certain adjustments in the schedules. Petitioners appealed to the superior court of Cook County, where the commission's order was approved and confirmed. They now bring the record to this court for further review. The question is whether the finding of the commission, that public convenience and necessity do not require the installation of additional trains, is supported by substantial evidence.

The suburban service provided by the Wabash railroad consists of train No. 12, inbound to Chicago, and train No. 13, outbound. The former originates at Decatur, Illinois. Beginning a few minutes before 7:00 A.M., it makes suburban stops at Orland Park, Palos Park, Worth, Chicago Ridge, and Oak Lawn, reaching Ashburn, the first stop within the city limits of Chicago, at approximately 7:18 A.M. It continues with stops at other stations in Chicago and arrives at the Dearborn station in the central business district of Chicago at about 8:00 A.M. Train No. 13 leaves the Dearborn station at 5:25 P.M. in the winter and 5:40 P.M. during daylight saving time, making stops comparable to those of train No. 12, and arrives at Orland Park approximately 52 minutes after its departure time. It then continues on to Decatur.

Petitioners produced as witnesses a number of riders, potential riders and representative citizens acquainted with local conditions. They testified to increases in population, new home building, and new industries in the localities served by the trains. A few testified there was a public need or demand for more transportation service. They admitted, however, that they had little or no occasion to ride the Wabash trains. Respondent introduced evidence showing large out-of-pocket losses in the operation of the two trains. It also presented an estimate of expense involved in providing an additional suburban train. The figures submitted showed that the annual cost of operation excluding original investment in facilities, would be $76,319.37; that 401,680 passengers each year would have to be carried to cover such cost; that the total number of suburban passengers carried by the Wabash railroad on all trains during the year ending October, 1947, was only 74,120; and that the annual net loss would be $61,224.55.

The record also discloses the existence of numerous alternative transportation facilities throughout the area in question. The Suburban Transit Company, a bus line,

operates motor buses through and from the several communities, and provides connections with both the Rock Island and the Illinois Central railroads. Connections are also made with the Rapid Transit elevated system at Sixty-third and Halsted streets in Chicago, and with the express buses of the Chicago Transit Authority at Sixty-third and Cicero. Many residents of the territory served by appellee use the Rock Island railroad or the Illinois Central railroad, reaching the stations by bus or automobile. A civil engineer, specializing in traffic and planning work, the making and analysis of traffic surveys and the formation of traffic improvement programs, testified to the few passengers which could be expected by the addition of trains requested by appellants. A consulting engineer for the Chicago Transit Authority testified concerning the network of local transportation facilities throughout Chicago and in the vicinity of appellee's Ashburn station, and gave his opinion as an expert that public convenience and necessity do not require additional service by the Wabash railroad between its Ashburn station and the downtown central business district.

Appellants point out that the use of existing alternative means of transportation is inconvenient to many persons; that the stations are frequently several miles distant, making it necessary to take a bus and pay an extra fare, or drive a private automobile upon which additional wear and tear is thus incurred; that the use of buses is not comparable to high speed suburban service enjoyed by other people who live near the stations; and that the average citizen prefers transportation by train to that of buses and streetcars. It is clear, however, that such factors cannot prevail where the cost of operating additional trains would greatly exceed any revenue which could reasonably be expected to accrue from the traffic. (See *Atcheson, Topeka and Santa Fe Railway Co.* v. *Commerce Com.* 397 Ill. 406, 418.) In determining matters of public convenience and

necessity the commission cannot look only at the requirements or desires of the persons to be served. It must also consider financial gains or losses involved in providing the service, the volume of business done or reasonably expected to be done, the number of people to be accommodated, the facilities and business of competing transportation companies, and other relevant factors. If the economic waste caused or likely to be caused in the operation of the particular facility outweighs the benefits and convenience to the public, the commission would not be warranted in ordering its maintenance or installation. (*Illinois Central Railroad Co.* v. *Commerce Com.* 397 Ill. 323.) Even though some individuals may suffer an inconvenience in its absence, a public necessity is not shown where the operation of the service in question would entail large losses, and substantial alternative means of transportation are available in the territory to be served. *Illinois Central Railroad Co.* v. *Commerce Com. ante,* page 77.

Appellants further dispute the accuracy of some of the figures submitted by appellee to show costs of operation. They also question the method of allocating general expenses. It would unduly extend this opinion to discuss separately each of such criticisms. We have examined them, however, and find them to be without substantial merit. The commission found, *inter alia,* that for the period November 1, 1946, to October 31, 1947, the trains incurred an operating loss of $118,269.13, taking only out-of-pocket expenses into consideration; that as of January, 1948, the operating loss would be $131,755.52, requiring 693,450 additional passengers to break even; that the estimated annual cost to operate one train daily each way would exceed probable passenger revenues by $61,224.55; that 322,235 additional passengers would be needed to eliminate the operating deficit; that there is not sufficient passenger traffic between Orland Park, the intermediate stations and Chicago to justify the operation of additional trains, since

they would have to be operated at a large out-of-pocket loss; and that there are sufficient alternative means of transportation to satisfy the convenience and necessity of the residents at other than the rush hours. Such findings are amply sustained by the evidence in this record, and constitute adequate support for the order in question.

Appellants contend the evidence that the equipment was old, unsanitary and uncomfortable proves it was appellee's policy to discourage traffic. They argue, further, that loss of revenue or business under such circumstances should not be used as a factor to relieve it from furnishing the additional service requested. The commission found that the equipment was the oldest regularly used by the railroad company; that it was hot, dirty and inadequate; and that the trains were often late. It ordered such equipment to be replaced with newer equipment having adequate seating capacity, lighting and ventilation, and directed certain revisions in the schedules. The commission did not find, however, that appellee had a policy of discouraging the use of its line or that the condition of the coaches was the cause of the operating deficits. Nor is it mandatory upon the commission to disregard all financial losses if the facilities are found to be uncomfortable or inadequate. Weighing the evidence and making findings of fact are matters within the domain of the commission. It is not a function of this court to enter upon an independent investigation of the evidence to develop facts not found by the commission. We cannot try again the questions in controversy and substitute our judgment for that of the commission. Its findings in the case at bar afford a reasonable basis for the order, and the findings are amply supported by the evidence. Under such circumstances, the order will not be disturbed.

The commission did not render its decision until almost ten months after the proofs and arguments had been made. In their petition for rehearing appellants requested that,

in view of such delay, further evidence be heard to ascertain current increases in population, new building, and the demand and necessity then existing for additional transportation facilities. They contend the commission was arbitrary and unreasonable in refusing to reopen the hearing, and assign the ruling as error in this court. The position cannot be sustained. No showing whatever was made that conditions had materially changed in the interim, and it is clear the commission did not abuse its discretion in the matter.

We have considered other arguments made by appellants and find them to be likewise without merit. Upon consideration of the evidence in this record, it is obvious that the order of the commission has substantial support therein. The judgment of the superior court, approving the order, is correct and will be affirmed accordingly.

*Judgment affirmed.*